USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 1/25/19

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

In re: CORPORATE RESOURCE
SERVICES, INC., *et al.*,

        Debtors.

No. 15-12329 (MG)

STAFF MANAGEMENT GROUP LLC and
STAFF HOLDING GROUP LLC f/k/a
STAFF MANAGEMENT GROUP, LLC,

        Appellants,

    v.

JAMES S. FELTMAN, not individually but
solely in his capacity as Chapter 11 Trustee of
the Estate of Corporate Resource Services,
Inc., *et al.*,

        Appellee.

No. 17-CV-8254 (RA)

OPINION
AND ORDER

RONNIE ABRAMS, United States District Judge:

This appeal concerns whether lawyers for two defendants in this bankruptcy action, A.

Mitchell Greene and the law firm Robinson Brog, should be disqualified. The United States

Bankruptcy Court for the Southern District of New York answered this question in the

affirmative, concluding that counsel's pecuniary interest in a client, and the possibility that

Greene would be called to testify against his clients' interests, violated New York Rules of

Professional Conduct 1.8(i), 1.10(a), and 3.7.

In granting the Trustee's motion for disqualification, the bankruptcy court cited egregious

conduct by counsel during discovery, including the withholding of critical documents and

information. Although the bankruptcy court noted that this misconduct created a likelihood of trial taint, it also made clear that its disqualification decision was based, not on counsel's purported discovery violations, but their violation of the foregoing rules of professional conduct.

This Court, like the bankruptcy court, is troubled by counsel's alleged misconduct during discovery, as well as the possibility that this conduct was motivated by counsel's pecuniary interest in the case. Nonetheless, for the reasons that follow, the Court respectfully disagrees with the bankruptcy court's determination that counsel violated the particular ethical rules cited by it as the basis for disqualification. The judgment of the bankruptcy court is therefore reversed and this case is remanded for proceedings consistent with this opinion.

## FACTUAL BACKGROUND

This section is based on undisputed facts found within the record, and details only those facts necessary to resolve the instant appeal.

### I.    CRS's Collapse

The debtors in this action, Corporate Resource Services, Inc. ("CRS") and its related entities, were providers of employment and human resource personnel for other companies. *See* 2014 Asset Purchase Agreement between Staff Management Group and Diamond Staffing Services at 1 (Dkt. 19-2, Ex. A). On January 31, 2014, Staff Management Group, LLC ("Old SMG"[1]) sold its name and business to Diamond Staffing Services, Inc., d/b/a CRS, for $10 million. Dkt. 19-2, Ex. A ¶ 2.1. Of this $10 million, $5 million was to be paid at the sale's closing, and the other $5 million was contracted to be paid over 24 months pursuant to an unsecured promissory note guaranteed by CRS (the "Note"). *Id.* ¶¶ 2.2(a)-(b).

---

[1] In their briefs, Appellants refer to this entity by its original name, Staff Holding Group (SHG), and the Trustee refers to it as the "Staff Management business." For clarity's sake, this Court simply refers to this entity as Old SMG.

Following a series of financial difficulties at CRS, on November 30, 2014, this company breached various covenants of its loan agreements with its lender, Wells Fargo Bank. *See* Appellants' Decl. for Emergency Stay ¶ 11 (Dkt. 4). Shortly after breaching these covenants, CRS learned, and reported in its January 27, 2015 8-K, that its payroll provider and affiliate, TS Employment Inc., had previously undisclosed tax liabilities of over $100,000,000. *Id.* ¶ 13. Subsequently, on February 1, 2015, CRS defaulted on its payment of the Note to Old SMG, with $2.9 million still owed on this debt. Dkt. 19-2 ¶ 75.

On February 4, 2015, CRS appointed a Chief Restructuring Officer, Robert Riiska, to help sort out its financial problems. Dkt. 4 ¶ 16. A week later, Riiska began sending out termination notices to CRS's customers, informing them that they had thirty days to replace CRS as their source for staffing services. *Id* ¶ 17. On February 12, 2015, CRS also failed to cure its default to Old SMG on the Note. *Id.*

In mid- to late February 2015, Bond Street Group, LLC ("Bond Street"), represented by the law firm Robinson Brog, expressed interest to Riiska in buying certain assets of CRS. *Id.* ¶ 19. In order to facilitate this transaction, Bond Street designated a new entity, Staff Management Group LLC ("New SMG") to purchase Old SMG.[2] Appellants' Br. at 11. This entity was composed of many of the previous partners of Old SMG, who sought to re-purchase the name and staffing of their original business. Dkt. 4 at 10-13. On March 9, 2015, Bond

---

[2] In its brief, the Trustee contends that Bond Street and Old SMG were essentially the same entity, and that "Robinson Brog [effectively] acted as Appellant SMG's counsel up through and immediately after the Closing." Trustee's Br. at 8. According to the Trustee, Appellants' motive "for maintaining the farcical position (that Chairman Greene and Robinson Brog represented 'Bond Street' and not [New] 'SMG')" is to avoid revealing that they violated Rule 1.8(a)'s requirement that "an attorney, entering into a business relationship with a client…provide various written disclosures when the parties' interests may diverge." *Id.* at 9. Because this alleged ethical violation is not at issue in this case, however, the Court does not consider it.

Street, through New SMG, purchased Old SMG from CRS for $250,000, and caused the remaining balance on the Note to be cancelled. *Id.* ¶ 37; Dkt 19-2 ¶ 72.

## II.     Greene's Interest in Old SMG

In order to help facilitate Old SMG's acquisition, New SMG raised $9,000,000 from various individuals. Dkt. 4 ¶ 34. On March 9, 2015, A. Mitchell Greene, a partner at Robinson Brog and the brother of Bond Street principal Eugene Greene, *id.* ¶ 19, loaned $300,000 to New SMG, consisting of 3.3% of its total acquisition amount, *id.* ¶ 34. On March 31, 2015, Greene also purchased 4% of the outstanding equity in New SMG for $250,000, which entitled him to class "B" non-voting membership units. *Id.* ¶¶ 9, 33. On June 12, 2015, Greene's loan was repaid with interest. *Id.* ¶ 35.

## PROCEDURAL BACKGROUND

**The Adversary Proceeding**

On February 2, 2015 and July 23, 2015, the debtors in this action filed Chapter 11 petitions in the U.S. Bankruptcy Court in the Southern District of New York and the District of Delaware, the latter petitions which were then transferred to New York. *See* Bankruptcy Court Opinion at 4-5 (Dkt. 17-22). On September 22, 2015, James S. Feltman was named Trustee for the debtors. Dkt. 19-2 ¶ 13. Pursuant to Bankruptcy Rule 2004, pre-suit discovery began shortly thereafter. Dkt. 17-22 at 6. On May 24, 2016, Greene, on behalf of Robinson Brog, filed a notice of appearance on behalf of Old and New SMG (collectively, the "Appellants") in the Chapter 11 case. *See* Trustee's Motion to Disqualify Robinson Brog and Greene (Dkt. 19-4) ¶ 4. As part of its Rule 2004 discovery demands, the debtors sought documents concerning, among other things, the 2015 purchase of Old SMG by New SMG. Dkt. 19-5 (Discovery Demands) at

52-54. In response, Robinson Brog produced 4,406 pages of materials on Appellants' behalf. Dkt. 19-4 ¶ 5.

On August 23, 2016, the Trustee brought an adversary proceeding (the "adversary proceeding") against Appellants asserting causes of action under the Bankruptcy Code for fraudulent conveyance and temporary disallowance of bankruptcy claims. *See* Dkt. 19-2. According to the Trustee, New SMG had purchased Old SMG at an artificially low price, as reflected by CRS's original purchase of this entity on January 31, 2014 for $10 million, and Old SMG's subsequent sale to New SMG on March 9, 2015 for only $250,000. *Id.* at 2-4. Based on this, the Trustee seeks "to avoid the 2015 transfer of [Old SMG] and to recover the $10 million value of the business that was conveyed to [New] SMG for, at most, $3.5 million ($250,000 plus forgiveness of at most approximately $2.9 million of debts)." *Id* at 3. In response, Appellants argue that Old SMG had "been decimated by CRS" during its brief ownership of this entity, and Old SMG's 2015 sale price matched its actual worth at that time. Appellants' Br. at 7; Dkt. 4 at 10.

**Fact Discovery and Robinson Brog's Discovery Conduct**

On May 22, 2017, fact discovery commenced in the adversary proceeding. Dkt. 19-4 ¶ 8. Shortly thereafter, Robinson Brog, on behalf of Appellants and third party Bond Street, began producing documents. *Id.* After reviewing these documents, the Trustee apparently learned, for the first time, that Greene had made a short-term loan of $300,000 to New SMG in March 2015, and three weeks after this entity's acquisition of Old SMG, had purchased $250,000 of equity in New SMG. Dkt. 17-22 at 6.

According to the Trustee, this production also revealed that Greene and Robinson Brog had improperly withheld numerous responsive documents to the Rule 2004 discovery requests

concerning New SMG's acquisition of Old SMG. *See* Trustee's Br. at 11-13. These previously undisclosed documents included, among other things, (1) an email "show[ing] a [New] SMG principal boasting four days before the closing date that [New] SMG was buying a $70 million company for a mere '20 cents on the dollar,'" (2) "a suppressed pitch-book, circulated to potential [Old] SMG investors, tout[ing] that the business assets at issue generated $70 million in annual revenues (and maintained steady performance)," and (3) an email in which another New SMG principal opines that the purchased assets were worth well more than their selling price. *Id.* at 4. The Trustee also asserts that Greene has refused to provide any further financial documents with respect to his pecuniary interest in New SMG, and that Robinson Brog has resisted "provid[ing] full details concerning Greene's participation in, and lending relationship" with this entity. Dkt. 17-22 at 7.

**The Disqualification Motion**

On September 14, 2017, the Trustee filed the present motion before United States Bankruptcy Judge Martin Glenn to disqualify Greene and Robinson Brog from representing Appellants. Dkt 8-1. According to the Trustee, disqualification was warranted for three principal reasons: first, Greene had acquired a proprietary interest in the litigation that he was conducting, thereby violating New York Rule of Professional Conduct 1.8(i); second, Greene would likely be called to testify against his clients in the adversary proceeding, thereby violating New York Rule of Professional Conduct 3.7; and third, Greene and Robinson Brog's personal and financial connection to their clients had caused them to engage in discovery misconduct. Dkt. 17-22 at 3; *see* Dkt. 8-1 at 15-21.

On October 4, 2017, the parties appeared before the bankruptcy court. Dkt. 4-17. As an initial matter, Judge Glenn made clear that, although counsel's discovery conduct might well

have warranted sanctions, he would not consider the Trustee's motion for disqualification on this ground. *See id.* at 28-29. The bankruptcy court then held argument on whether counsel had violated Rules 1.8(i) and 3.7. *See id.* at 30-50. After the parties had an opportunity to be heard, Judge Glenn held that counsel should be disqualified, *id.* at 52-54, which he subsequently detailed the basis for in a written opinion, Dkt. 17-22.

In its opinion, the bankruptcy court first noted that there was no dispute that Greene had advanced his own money to make a short-term loan to New SMG to aid in its acquisition of Old SMG and that Greene still held a 4% ownership stake in New SMG. *Id.* at 13. Because the outcome of the adversary proceeding would impact Greene's personal finances, the bankruptcy court concluded that Greene had "'acquir[ed] a proprietary interest in ... the subject matter of litigation that [Greene] is conducting for [the Defendants],' barring his representation of the Defendants under Rule 1.8(i)." *Id.* (quoting Rule 1.8(i)) (brackets in original). Although, once again, Judge Glenn made clear that his disqualification decision was not based "on the discovery disputes raised by the parties," he also noted that Greene's improper discovery conduct demonstrated the danger "of an attorney whose personal interests are at stake in a litigation," thereby "present[ing] the risk of trial taint." *Id.* at 14. The bankruptcy court then imputed Greene's violation of Rule 1.8(i) to Robinson Brog under Rule 1.10(a), resulting in the entire firm's disqualification from the adversary proceeding. *See id.* at 14-15.

Second, the bankruptcy court held that Greene and Robinson Brog should be disqualified under Rule 3.7, which provides that counsel "'shall not act as advocate before a tribunal in a matter in which the lawyer is likely to be a witness on a significant issue of fact.'" *Id.* at 15 (quoting Rule 3.7(a)). In the bankruptcy court's view, Greene was likely to be a witness on the central dispute of the adversary proceeding, namely, "whether the consideration for the

[acquisition] was adequate." *Id.* According to the bankruptcy court, Greene might not only be asked to testify at trial regarding why certain documents were withheld during Rule 2004 discovery, but, as a part-owner of New SMG, could be asked to reveal why he believed Old SMG was bought by New SMG at such a low price. *Id.* at 16. Based on this, the bankruptcy court concluded that disqualification was "warranted because Greene's role as a likely fact witness … present[ed] a significant risk of prejudice" to his own clients. *Id.*

On October 10, 2017, the bankruptcy court denied Appellants' motion for reconsideration in a brief order. *See* Dkt. 19, Ex. 11. On October 18, 2017, Appellants filed a notice of appeal to this Court, Dkt. 1, as well as an emergency motion to stay the bankruptcy court's decision pending appeal, Dkt. 3. On November 3, 2017, this Court granted the emergency motion on Appellants' behalf in a bench ruling, concluding that "appellants are likely to succeed in challenging the bankruptcy court's disqualification of their counsel." *See* Nov. 3, 2017 Conference Transcript (Dkt. 12) at 30. Appellants then filed papers seeking to have this Court overturn the bankruptcy court's disqualification decision, after which the Trustee responded and Appellants replied. *See* Dkts. 16-20.

## STANDARD OF REVIEW

District courts have jurisdiction to hear appeals from "final judgments, orders, and decrees" of bankruptcy courts, 28 U.S.C. § 158(a), and may modify, affirm, reverse, or remand such judgments, orders, or decrees with instructions for further proceedings, *In re Queen Elizabeth Realty Corp.*, 586 B.R. 95, 104 (S.D.N.Y. 2018). Judgments disqualifying counsel are considered final for purposes of appellate review. *In re AroChem Corp.*, 176 F.3d 610, 620 (2d Cir. 1999).

Generally, a "district court hearing an appeal from a bankruptcy court reviews the bankruptcy court's findings of fact under the 'clearly erroneous' standard, *see* Fed. R. Bankr. P. 8013, while its conclusions of law are reviewed under the de novo standard." *In re Yohannes*, No. 06 Civ. 461 (LTS), 2007 WL 2034301, at *2 (S.D.N.Y. July 17, 2007). Nevertheless, "[m]atters left to the [bankruptcy] court's discretion are reviewed for abuse of discretion." *In re Adelphia Commc'ns Corp.*, 342 B.R. 122, 126 (S.D.N.Y. 2006) (internal quotation marks omitted). "The disqualification of an attorney in order to forestall violation of ethical principles is a matter committed to the sound discretion of the [trial] court." *In re Adelphia Commc'ns Corp.*, 04 Civ. 2192 (DAB), 2005 WL 425498, at *4 (S.D.N.Y. Feb. 16, 2005) (brackets in original). This Court will thus review the bankruptcy court's decision to disqualify Appellants' counsel under the abuse of discretion standard. *See Ball v. A.O. Smith Corp.*, 321 B.R. 100, 113 (N.D.N.Y. 2005) ("It is well settled in the Second Circuit that 'a motion to disqualify an attorney is addressed to the discretion of the trial court, and a ruling thereon [by a bankruptcy court] will not be overturned absent a determination of abuse of discretion.'") (quoting *Cheng v. GAF Corp.*, 631 F.2d 1052, 1055 (2d Cir. 1980), *vacated on other grounds*, 450 U.S. 903 (1981)).

"A bankruptcy court abuses its discretion when its ruling is based on an erroneous view of the law or a clearly erroneous assessment of the evidence." *In re Soundview Elite Ltd.*, 646 Fed. App'x 1 (2d Cir. 2016); *In re Highgate Equities*, 279 F.3d 148, 152 (2d Cir. 2002) (While the bankruptcy court is "better situated than the court of appeals to marshal the pertinent facts and apply the fact-dependent legal standard that informs its determination as to whether sanctions are warranted," a bankruptcy court "would necessarily abuse its discretion if it based its ruling on an erroneous view of the law or on a clearly erroneous assessment of the evidence.") (internal quotation marks omitted).

When considering a motion for disqualification, courts must use a "restrained approach that focuses primarily on preserving the integrity of the trial process." *Armstrong v. McAlpin*, 625 F.2d 433, 444 (2d Cir. 1980), *rev'd on other grounds*, 449 U.S. 1106 (1981). "Because disqualification motions interfere with a party's right to the counsel of its choice and are often made for tactical reasons, they are viewed with disfavor." *Amusement Indus., Inc. v. Stern*, 657 F. Supp. 2d 458, 460 (S.D.N.Y. 2009) (citation omitted). The party moving for disqualification must meet a "heavy burden of proof in order to prevail." *Gormin v. Hubregsen*, No. 8 Civ. 7674 (PGG), 2009 WL 508269, at *2 (S.D.N.Y. Feb. 27, 2009) (internal quotation marks omitted). Disqualification is only appropriate if "an attorney's conduct tends to taint the underlying trial." *Bd. of Educ. v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir. 1979) (citation and internal quotation marks omitted).

Although "federal courts look to state disciplinary rules when considering motions for disqualification, such rules need not be rigidly applied as they merely provide general guidance." *John Wiley & Sons, Inc. v. Book Dog Books, LLC*, 126 F. Supp. 3d 413, 419 (S.D.N.Y. 2015) (internal quotation marks omitted). As a result, even a violation of disciplinary rules "may not warrant disqualification." *GSI Commerce Sols., Inc. v. BabyCenter, L.L.C.*, 618 F.3d 204, 209 (2d Cir. 2010). Ultimately, when deciding a disqualification motion, courts must "balance a client's right freely to choose his counsel against the need to maintain the highest standards of the profession." *John Wiley*, 126 F.3d at 419 (internal quotation marks omitted).

## DISCUSSION

Appellants argue that the bankruptcy court erred in disqualifying Greene and Robinson Brog as counsel for three principal reasons. First, although Appellants agree that Rule 1.8(i) prohibits attorneys from "acquiring an interest in a claim or the subject matter of their client's

litigation," they contend that that did not happen here. Appellants' Br. at 15. Rather, Greene purchased his 4% equity interest in New SMG well before the adversary proceeding commenced. *Id.* With respect to Rule 3.7, Appellants urge that Greene's testimony would be neither critical nor necessary in the adversary proceeding. *Id.* at 16. This is because Greene is one of thirteen other holders of class "B" shares in New SMG, and, according to Appellants, has no more knowledge than they of the company's internal workings. *Id.* at 16, 31. Finally, Appellants contend that the bankruptcy court, at the very least, had no basis to disqualify Greene or Robinson Brog from representing Old SMG, as Greene never possessed any interest in or lent any capital to that particular entity. *Id.* at 16.

The Court addresses each of these arguments in turn.

## I.      Whether A. Mitchell Greene Violated Rule 1.8(i) of the New York Rules of Professional Conduct

New York Rule of Professional Conduct 1.8(i), like its predecessor, Disciplinary Rule 5-103(A), makes clear that "[a] lawyer shall not acquire a proprietary interest in the cause of action or subject matter of litigation the lawyer is conducting for a client." In this case, it is undisputed that Greene (1) advanced $300,000 to allow New SMG to acquire Old SMG on March 9, 2015, and (2) continues to hold a 4% ownership interest in New SMG that he originally purchased on March 31, 2015. It is also undisputed that the adversary proceeding between the Trustee and Appellants concerns whether New SMG purchased Old SMG for an artificially low price. Based on these undisputed facts, the bankruptcy court concluded that, because Greene had "acquir[ed] a proprietary interest in the ... subject matter of litigation that [Greene] is conducting for [the Defendants]," and "the Adversary Proceeding will necessarily impact directly Greene's personal financial interests," his representation of the defendants was barred under Rule 1.8(i). *See* Dkt. 17-22 at 13 (brackets in original); *see id.* at 14 ("[S]ince Greene *currently* represents the

Defendants, and *currently* holds equity in a Defendant, his interests are conflicted under the rule.") (emphases in original).

As a preliminary matter, the Court recognizes that there are good reasons for counsel not to have a proprietary interest in his or her client. Perhaps most obviously, a lawyer's financial stake in his client might affect his professional judgment during the representation. Moreover, as the New York State Bar Association Committee on Professional Ethics has noted, such conduct may "encourage the pursuit of litigation that should not otherwise be brought." N.Y.B.A., Ethics Op. 808 (2007).

In spite of the legitimate concerns underlying Rule 1.8(i), however, or the sagacity of Greene possessing a financial stake in his client, the Court cannot conclude that the rule's plain text merits his disqualification. This is because the rule only prevents lawyers from acquiring a proprietary interest—as opposed to having pre-existing ownership—in the subject matter of litigation they are conducting for a client. *See* Rule 1.8(i) (providing that "[a] lawyer *shall not acquire* a proprietary interest in the cause of action or subject matter of litigation *the lawyer is conducting for a client*") (emphases added). In other words, under Rule 1.8(i), while counsel is barred from purchasing ownership in the subject matter of the litigation that he is conducting on behalf of a client, he is not barred from representing a client where his financial interest in the client or transaction involving the client preceded the litigation. The New York State Bar Association Committee on Professional Ethics has interpreted the rule in this very manner. As the committee opined, Rule 1.8(i) "do[es] not prevent a lawyer with a *preexisting interest* in the subject matter of a litigation from representing a client whose interests are aligned with the lawyer's in that litigation." N.Y.B.A., Ethics Op. 777 (2004) (emphasis added) (citing interpretations of similar rules in other states). Here, it is undisputed that Greene's proprietary

12

ownership in New SMG *preceded* the litigation over New SMG's purchase of Old SMG. As for Old SMG, there is no contention that Greene ever lent money to or owned equity in this company.

In response, the Trustee makes several arguments, none of which the Court finds persuasive. First, the Trustee argues that Ethics Opinion 777 is not binding on this Court, and, as a result, it should feel free to disregard this decision. Trustee's Br. at 28. The Trustee is of course correct that bar opinions do not bind this Court. *See, e.g., Miano v. AC & R Advertising, Inc.*, 148 F.R.D. 68, 83 (S.D.N.Y. 1993). But where, as here, the most natural reading of the text also aligns with such an opinion, the Court sees no reason to disregard this source of guidance. *See id.* ("Although bar opinions are not binding on this Court, they are instructive in applying ethical rules to attorney conduct in litigation and provide guidance to attorneys themselves in conforming their conduct to ethical proscriptions.")

Second, the Trustee contends that Opinion 777 only interpreted Rule 1.8(i) to protect counsel who "innocently hold a pre-existing equity interest in a long-time client whom the lawyer later attempt[s] to defend in ***unrelated*** general litigation." Trustee's Br. at 28 (emphases in original). The Trustee provides no support for this assertion, however, and none can be found in either the text of Rule 1.8(i) or in Opinion 777.

Third, the Trustee argues that, contrary to Opinion 777, "multiple New York Courts have found Rule 1.8(i) violations where attorneys (like [] Greene) took a proprietary interest contemporaneously with the events that give rise to the dispute." *Id.* at 29. For this proposition, the Trustee, like the bankruptcy court, primarily cites to *Peggy Walz, Inc. v. Lin Wain, Inc.*, No. 94 Civ. 1579 (CSH), 1996 WL 88556 (S.D.N.Y. March 1, 1996); *see* Dkt. 17-22 at 13. In *Peggy Walz*, a designer of painted linen products sued another design company for copyright

infringement. *Id.* at *1-2. The plaintiff's incorporation agreement specified that its counsel, David Just, was entitled to certain monetary recovery that Peggy Walz was awarded if Just commenced a lawsuit on its behalf. *Id.* According to the district court, because Just would receive a "substantial, explicit and direct proprietary" interest in the plaintiff's cause of action against the defendant "and in the copyrighted designs that form the subject matter of th[at] action," his disqualification was appropriate under 1.18(i)'s predecessor rule. *Id.* at *3.

In the instant action, however, counsel cannot be said to have such an interest in his client. This is because, although Greene has ownership in New SMG and will presumably benefit if the company is successful in the adversary proceeding, he has not contracted with this client to recover if he brings a successful suit on its behalf. *See Residences at Bay Point Condos. Assoc., Inc. v. Chernoff Diamond & Co., LLC*, No. 16-5190 (MCA)(MAH), 2017 WL 3531683, at *11 (D.N.J. Aug. 17, 2017) (reading *Peggy Waltz* to interpret Rule 1.8(i) in a context "where the attorney had become an interested party or investor in the claim itself, such as by becoming their clients' creditors for a sum of money that could potentially be awarded in the litigation"); *European Cmty. v. RJR Nabisco, Inc.*, 134 F. Supp. 2d 297, 308 n. 9 (E.D.N.Y. 2001) (noting that *Peggy Waltz* involved a violation of Rule 1.8(i) where "the attorney's pecuniary interest was coterminous with the subject matter of the suit"). *Peggy Waltz* is therefore distinguishable from the present case.[3]

Finally, the Trustee contends that this Court does not have to decide that the bankruptcy court was ultimately correct in its decision under an abuse of discretion standard; instead, according to the Trustee, "this Court only needs to find that Judge Glenn's decision was not

---

[3] Nor does the other case cited by the Trustee (and by the bankruptcy court) aid his position here. *See Norma Bros. v. Earl's Fashions, Inc.*, No. 83 Civ. 3767 (JFK), 1984 WL 166, at *2 (S.D.N.Y. Apr. 12, 1984) (disqualifying an attorney under Rule 5-103 where the attorney would recover on his client's "accounts receivable upon which th[e] action [was] based").

unreasonable." Trustee's Br. at 29. But this is not an accurate characterization of the relevant standard. As the Second Circuit has held, while the bankruptcy court is better situated than a court of appeal to assess "the pertinent facts and apply the fact-dependent legal standard that informs its determination as to whether sanctions are warranted," such a court "necessarily abuse[s] its discretion if it based its ruling on an erroneous view of the law ...." *In re Highgate Equities*, 279 F.3d at 152; *see also In re Metiom*, 318 B.R. 263, 267 (S.D.N.Y. 2004) (To overturn a bankruptcy court's judgment based on an abuse of discretion standard, "this Court would have to find that there is a substantial possibility that the Bankruptcy Court based its decision on an erroneous view of the law."). Because, as explained above, this Court concludes that the bankruptcy court erred in its interpretation of Rule 1.8(i) as applicable to the facts in this case, it necessarily abused its discretion in reaching the outcome it did in this matter.

For these reasons, the Court concludes that Greene should not have been disqualified under Rule 1.8(i) in his representation of Appellants. It thus follows that Robinson Brog should not have been disqualified under Rule 1.10(a). *See* Rule 1.10(a) ("While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rule 1.7, 1.8 or 1.9[.]").

## II.  Whether A. Mitchell Greene Violated Rule 3.7(a) of the Rules of Professional Conduct

Under Rule 3.7(a), which codified what is known by courts as the witness-advocate rule (or the advocate witness rule), lawyers are prohibited from "[a]ct[ing] as advocate before a tribunal in a matter in which the lawyer is likely to be a witness on a significant issue of fact." According to the bankruptcy court, because Greene would likely be called as a witness "on a central factual issue in the Adversary Proceeding," or "whether the consideration for [the

acquisition] was adequate," his disqualification was warranted under this rule as well. Dkt. 17-22 at 15.

Again, this Court must respectfully disagree with the bankruptcy court's decision. First, it is highly questionable whether Rule 3.7(a) would even apply in Greene's case. As the Second Circuit has remarked, "[t]he advocate-witness rule applies, first and foremost, where the attorney representing the client before a jury seeks to serve as a fact witness *in that very proceeding*." *Ramey v. Dist. 141, Intern. Ass'n of Machinists and Aerospace Workers*, 378 F.3d 269, 282 (2d Cir. 2004) (emphasis in original). For that reason, certain district courts in this Circuit have refused to apply this rule unless "that attorney actually advocates in front of a jury." *BT Holdings, LLC v. Vill. of Chester*, No. 15 Civ. 1986 (CS)(JCM), 2015 WL 8968360, at *6 (S.D.N.Y. Dec. 14, 2015); *see also Bartolini v. Mongelli*, No. 17-CV-6276 (PKC)(SJB), 2018 WL 2725417, at *5 (E.D.N.Y. June 5, 2018) (declining to find that this rule applies where the attorney at issue was "not simultaneously acting as a lawyer in this case and as a witness"); *Finkel v. Frattarelli Bros.*, 740 F. Supp. 2d 368, 373 (E.D.N.Y. 2010) ("Disqualification under subsection [3.7](a) is triggered only when the attorney actually serves as an advocate before the jury."). Here, it is undisputed that Greene, a transactional lawyer, will not serve as trial counsel in the adversary proceeding. *See* Appellants' Br. at 28 (noting that Greene "is not serving as trial counsel in the Adversary Proceeding, has not entered a notice of appearance in the Adversary Proceeding, nor is he involved in litigation strategy, tactics, or any other aspects of the case"); *see also Murray v. Metro. Life Ins.*, 583 F.3d 173, 178 (2d Cir. 2009) (stating that, where three of the lawyers called to testify at trial were "transactional lawyers who are not and will not be trial advocates," they could not "properly [be] considered trial counsel for purposes of Rule 3.7(a)").

Even if Rule 3.7(a) applied to Greene in this case, moreover, the Trustee must also show that his testimony would be "necessary" at trial. "[W]here only the moving party intends to call the adversary's attorney as a witness, the movant must demonstrate both that the lawyer's testimony is necessary and that there exists a substantial likelihood that the testimony would be prejudicial to the witness-advocate's client." *Wiley*, 126 F. Supp. 3d at 420 (internal quotation marks omitted). The availability of other witnesses on the same testimony is considered "fatal to the 'necessity' prong of the disqualification inquiry." *Id.* at 423.

In this case, there were thirteen other investors in New SMG. Greene has no voting interest in the company, is not a principal, and has a relatively small equity stake. Although Greene lent money to New SMG to help it acquire Old SMG from CRS, the transaction at issue in the adversary proceeding, his share accounted for only 3.3% of the total capital raised in this transaction.

It may well be true, as the bankruptcy court pointed out, that Greene received documents, immediately prior to the transaction, indicating that Old SMG was being purchased "at a bargain price." Dkt. 17-22 at 16. But the Trustee does not dispute that such documents were sent to multiple persons, *see* Trustee's Br. at 32, and has provided no reason why these other individuals, chief among them Greene's own clients, could not be questioned about the content of these documents at trial, *see Acker v. Wilger*, No. 12 Civ. 3620 (JMF), 2013 WL 1285435, at *3 (S.D.N.Y. March 29, 2013) ("Where, as here, an alternative witness, such as the client, can testify to the information that the movant seeks to elicit from the attorney, a motion for disqualification should be denied."); *Finkel*, 740 F. Supp. 2d at 375 ("Where counsel's testimony would be merely cumulative of testimony provided by others, disqualification is not appropriate."). Nor do Appellants contend that Greene has any unique knowledge of Old SMG's

actual worth at the time of its purchase by CRS or New SMG. *See Solow v. Conseco, Inc.*, No. 06-CIV-5988 (BSJ)(THK), 2007 WL 1599151, at *4 (S.D.N.Y. June 4, 2007) ("The rule requires that a lawyer's testimony be necessary, not simply that it be the best evidence, and to that end, courts deem a lawyer's testimony necessary only if there [are] no other witnesses to the circumstances at issue.") (brackets in original) (internal quotation marks omitted); *S & S Hotel Ventures Ltd. P'ship v. 777 S.H. Corp.*, 69 N.Y.2d 437, 446 (N.Y. 1987) ("[T]estimony may be relevant and even highly useful but still not strictly necessary.").

In response, the Trustee does not attempt to argue that Greene's testimony was necessary to the adversary proceeding. Rather, the Trustee contends, as the bankruptcy court found, that this prong does not apply when one is testifying as a fact witness rather than based on his or her knowledge as an attorney in the underlying proceeding. *See* Trustee's Br. at 31; *see* Dkt. 17-22 at 12 ("Here, this Court is loath to require the Trustee to show that Greene's testimony is necessary," as such cases "deal with situations in which a lawyer is being called by an adversary as a witness to testify as a lawyer *qua* lawyer."). But the Court is unaware of any case law in support of this proposition. *See Gorbaty v. Wells Fargo Bank, N.A.*, No. CV-10-3291 (NGG), 2011 WL 318090, at *2 (E.D.N.Y. Feb. 1, 2011) (considering the necessity prong in a Rule 3.7(a) analysis where contested counsel was "a co-borrower on the loans in dispute and was present at the closing on the loans"). Indeed, often it may be difficult to determine where, or how, one should draw the line between a lawyer testifying as simply a "fact witness" or in his or her capacity as a "lawyer *qua* lawyer." In this case, for example, Greene could testify as a fact witness with regard to whether he believed that New SMG was purchasing Old SMG at an artificially low price, and in his capacity as a lawyer with regard to why he allegedly withheld certain documents during discovery.

18

Accordingly, Greene should not have been disqualified from representing Appellants under Rule 3.7(a).

## III. Whether Robinson Brog Violated Rule 3.7(b) of the Rules of Professional Conduct

The bankruptcy court determined that, in addition to disqualifying Greene, it was also necessary to disqualify Robinson Brog by imputation under Rule 3.7(b). Pursuant to Rule 3.7(b), "[a] lawyer shall not act as advocate before a tribunal in a matter if … another lawyer in the lawyer's firm is likely to be called as a witness on a significant issue other than on behalf of the client, and it is apparent that the testimony may be prejudicial to the client." As the Second Circuit clarified in *Murray v. Metro. Life Ins.*, 583 F.3d at 178-79, because 3.7(b) lends itself "to opportunistic abuse," "a law firm can be disqualified by [such] imputation only if the movant proves by clear and convincing evidence that" the witness will "provide testimony prejudicial to the client" and "the integrity of the judicial system will suffer as a result."

In its opinion, the bankruptcy court deemed imputation to be appropriate in this case because Greene may be asked to testify at the adversary proceeding about certain documents he withheld from the Trustee, and, "more importantly, will likely be called to testify about the content of the documents themselves, as he is a recipient of at least one of the documents which appears to support the Trustee's claim that the sale was at a bargain price." Dkt. 17-22 at 16. Because Greene's answers could potentially prejudice his client, the bankruptcy court determined that disqualification of Robinson Brog was then warranted. *Id.*

This Court respectfully disagrees with that determination because the standard articulated in *Murray* that courts must consider when imputing a violation of Rule 3.7(b) onto a law firm has not been met. First, there was no "clear and convincing evidence" that Greene's testimony would be prejudicial to his client. *Murray*, 583 F.3d at 178-79. Although the Trustee

asserts that Greene will be forced to assert on the stand that he was aware that Old SMG was bought by New SMG at "a bargain basement price," Trustee's Br. at 6, 32-33, it seems just as likely that he will testify that, given CRS's financial troubles, Old SGM was worth far less than its original value, *see* Appellants' Br. at 30 ("Of course, there is an explanation (ignored by the bankruptcy court) that is not prejudicial at all to Defendants: at the time of the 2015 APA Transaction, the assets were worth very little and the purchase price reflected that."); *see also Finkel*, 740 F. Supp. 2d at 377 (finding that the prejudice prong could not be met where "there is no reason to believe that counsel's testimony would be inconsistent with their clients' account of the facts"). This Court is thus unwilling to rely solely on the Trustee's speculation that Greene will provide testimony against his client's interest. *See Gormin*, 2009 WL 508269 at *2 ("The party seeking disqualification must bear a heavy burden of proof in order to prevail, and mere speculation will not suffice.") (internal quotation marks omitted); *Finkel*, 740 F. Supp. 2d at 376 ("Speculation as to the testimony that counsel would give is not sufficient to support a motion to disqualify.")

Moreover, "the public in general has an interest in the swift and orderly administration of justice." *Murray*, 583 F.3d at 180. In this case, disqualification would force Appellants to obtain new counsel. There is no doubt that "[a]ppreciable time and money would be spent" to prepare such counsel, *id.*, especially where, as here, they would have to familiarize themselves with the extensive discovery in this case and formulate their own trial strategy. This case has been stayed for over a year now, and requiring a change of counsel will undoubtedly lead to even further delay in the underlying bankruptcy proceeding. The Court therefore concludes that the bankruptcy court abused its discretion by disqualifying Robinson Brog under Rule 3.7(b).

## IV.    The Possibility of Trial Taint

Finally, the Trustee contends that, regardless of Greene's breach of any ethical rules, his conduct has "taint[ed] the case or affect[ed] the integrity of the adversarial process," which separately warrants his disqualification in this case.    Trustee's Br. at 22.  This is especially true where, according to the Trustee, counsel committed multiple discovery violations in order to cover up its financial interest in its client. *See id.* at 23.

It is true that "[d]isqualification is warranted when the violations alleged pose a significant risk of trial taint." *Nw. Nat. Ins. Co. v. Insco, Ltd.*, No. 11 Civ. 1124 (SAS), 2011 WL 4552997, at *8 (S.D.N.Y. Oct. 3, 2011) (internal quotation marks omitted).  But the Trustee cites no case law disqualifying a lawyer based on trial taint absent an underlying violation of the ethical rules. *See Glueck v. Jonathan Logan, Inc.*, 653 F.2d 746, 748 (2d Cir. 1981) ("Recognizing the serious impact of attorney disqualification on the client's right to select counsel of his choice, we have indicated that such relief should ordinarily be granted only when a violation of the Canons of the Code of Professional Responsibility poses a significant risk of trial taint."); *Drag Racing Techns., Inc. as D.R.T., Inc. v. Universal City Studios, Inc.*, No. 02 Civ. 0958 (BSJ)(JCF), 2003 WL 1948798, at *3 (S.D.N.Y. Apr. 24, 2003) ("To establish that such a risk [of trial taint] exists, the moving party must identify a violation of the Canons ...."); *Pfizer v. Stryker Corp.*, 256 F. Supp. 2d 224, 226 (S.D.N.Y. 2003) ("[T]he Second Circuit has made clear that disqualification is appropriate, at least in most cases, only if a violation of the Code of Professional Responsibility gives rise to 'a significant risk of trial taint.'") (quoting *Glueck*, 653 F.2d at 748).[4]

---

[4] Although some courts in this Circuit have stated that "disqualification may be justified even in the absence of a clear ethical breach 'where necessary to preserve the integrity of the adversary process,'" *Merck Eprova A.G. v. ProThera, Inc.*, 670 F. Supp. 2d 201, 208 (S.D.N.Y. 2009) (quoting *Board of Educ. v. Nyquist*, 590 F. 2d 1241, 1246

As for counsel's purported discovery violations, the Court shares the view that these allegations are deeply troubling. Indeed, counsel may have violated New York Rule of Professional Conduct 3.4(a)(1), which restricts lawyers from "suppress[ing] any evidence that the lawyer or the client has a legal obligation to reveal or produce." The bankruptcy court did not disqualify counsel on these grounds, however, and the Trustee has not asked the Court to consider counsel's conduct in the context of that rule. Rather, the question before the Court is whether Greene and Robinson Brog violated Rules 1.8(i), 1.10(a), or 3.7. Because, as explained above, the Court determines that they did not, it holds that counsel should not have been disqualified on the basis that the violation of these rules created the possibility of trial taint.

## CONCLUSION

The Court does not condone Greene and Robinson Brog's purported actions in this bankruptcy matter. If the Trustee's discovery allegations are true, the bankruptcy court would be well within its discretion to sanction counsel. For the foregoing reasons, however, the Court concludes that it was error to disqualify Greene and Robinson Brog for violating Rules 1.8(i), 1.10(a), and 3.7.

Accordingly, the bankruptcy court's ruling is reversed and this case is remanded for further proceedings consistent with this opinion. The Clerk of Court is respectfully requested to terminate this appeal.

SO ORDERED.

Dated:  January 25, 2019
        New York, New York

Ronnie Abrams
United States District Judge

---

(2d Cir. 1979)), even in these cases, the courts based their decisions regarding disqualification of counsel on whether these attorneys had violated a rule of professional conduct, *see id.* at 209-14; *First NBC Bank v. Murex, LLC,* 259 F. Supp. 3d 38, 56, 58-74 (S.D.N.Y. 2017); *Revise Clothing, Inc. v. Joe's Jeans Subsidiary, Inc.,* No. 09 Civ. 3961 (BSJ)(JCF), 2010 WL 481206, at *6, 8-14 (S.D.N.Y. Jan. 13, 2010).